UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TONY B. ALEXANDER, | ) | 1:09-CV-434 DLB HC |
| | ) | |
| Petitioner, | ) | ORDER REGARDING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS (Doc. No. 1) |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK TO ENTER |
| SCOTT SCHLEDER, Southeast Regional DHO, | ) | JUDGMENT IN FAVOR OF RESPONDENT |
| | ) | |
| Respondent. | ) | |

Tony B. Alexander (hereinafter "Petitioner") is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 301(b).

**BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is a federal inmate serving a 292 month sentence from the Western District of North Carolina for conspiracy to possess with intent to distribute cocaine and cocaine base near a protected location, in violation of 21 U.S.C. § 846. See Respondent Attachment 1. At the time the challenged incident reports were issued, Petitioner was housed at the Federal Correctional Institution ("Estill FCI") in Estill, North Carolina. In March 2009, when Petitioner filed the instant petition, he was in the custody of the United States Penitentiary in Atwater, California. Since the filing of his petition, Petitioner has been transferred and is currently in the custody of the United States Penitentiary in Pollock, Louisiana.

Petitioner filed the instant petition for writ of habeas corpus on March 9, 2009. Petitioner

1  asserts that his due process rights were violated because he was not allowed to present a surveillance
2  video in his defense at his prison disciplinary hearing.  Respondent filed an answer to the petition on
3  January 12, 2010.  Petitioner filed a traverse on March 8, 2010.

**FACTUAL HISTORY**

On October 23, 2007, while Petitioner was housed at the Estill FCI, Officer Gina Martin ("Officer Martin") wrote Incident Report No. 165827, charging Petitioner with Engaging in Sexual Acts in violation of Code 250, and Indecent Exposure in violation of Code 300.  See Respondent Attachment 3.  Officer Martin states that on October 23, 2007, at approximately 10:22 am, the following occurred:

> While working on [day watch] as Unit AA Officer.  I was in the upstairs office, when I turned around and observed inmate Alexander #12288-058 inside the upstairs cardroom in front of the door with his shorts pulled down to his knees, his right hand was on his penis masturbating while looking at me.  Inmate Alexander observed me leaving the office "yelling for him to stop" while approaching the cardroom he continued masturbating.  Once I got close to the cardroom he pulled up his shorts and exited the cardroom. He picked up the unit phone pretending to talk.

See Respondent Attachment 3.  Petitioner was provided a copy of this incident report later this same day by Lieutenant C. Lavant.  See Respondent Attachment 3 at 1, 5.

On October 26, 2007, while housed in the Special Housing Unit ("SHU") at Estill FCI, Officer Tiwanna Jenkins wrote Incident Report No. 1660209, charging Petitioner with Engaging in Sexual Acts in violation of Code 205, as well as Refusing to Obey an Order in violation of Code 307.  See Respondent Attachment 4.  Officer Jenkins states the following:

> On [October 26, 2007, at 7:00 pm], I Officer T. Jenkins was on three range passing out food trays for the evening meal.  When I approached cell z-310 and opened the food flap, inmate Alexander, Tony (register #12288-058) was at the door and I observed him with his penis fully exposed with his hands on it moving in an upward and downward motion.  I gave him a direct order to cease his behavior and inmate Alexander refused and continued.  I Officer Jenkins then secured the food flap and proceeded with the evening meal.

Id.

Petitioner was provided a copy of Incident Report No. 1660209 on October 27, 2007 by Lieutenant C. Hickey.  Id. at 1, 5.

Petitioner sent two Inmate Request to Staff (hereinafter referred to as "copouts"), each dated October 26, 2007, and each addressed to Captain Bondurant and Lieutenant Buckler, asking that they review the video evidence in connection with these two incident reports.  See Petition at 9, 10.

With regard to Incident Report No. 1658527, Petitioner asked that Captain Bondurant and Lieutenant Buckler review the security camera facing the cardroom in Unit AA, which he claimed would show that he never stood in front of the cardroom door and masturbated. See Petition at 9. On October 29, 2007, Lieutenant Buckler responded to Petitioner that the "area you are referring to is a blind [spot] on the video. Unable to see anything in that area." Id.

With regard to Incident Report No. 1660209, Petitioner asked that Captain Bondurant and Lieutenant Buckler review the security camera for "three range." Id. at 10. Petitioner contends that the video would show that Officer Jenkins opened the food flap, handed him two food trays, one apple, filled a cup of juice, and closed the flap, all with no conversation or disruption. Id. Petitioner argues that the videotape would show that his version of the events are accurate and that Officer Jenkin's report was false. On October 29, 2007, Lieutenant Buckler responded to Petitioner that the "video shows officer passing out food trays, drinks and fruit on range, however it does not show what activities are taking place inside your cell." Id.

On November 2, 2007, Petitioner appears to have sent a third copout to Lieutenant Buckler, SIS (Special Investigative Services). Id. at 11. In his third copout, Petitioner questioned Lieutenant Buckler's responses to his first two copouts, and demanded that Lieutenant Buckler determine whether reporting staff lied in the incident reports. Id. It is not clear from the record whether Lieutenant Buckler responded. Id. Petitioner provides what appears to be a response to his third copout that states: "The SIS office was contacted regarding your allegation of staff misconduct. The camera angle was checked by the lieutenant. There is no evidence of misconduct. The officer wrote up the incident as she observed it." This response is signed by C. Rhodes, case manager.[1] See Petition at 12.

On November 8, 2007, Petitioner alleges to have sent several documents to the DHO ("Discipline Hearing Officer") via fax. See Petition at 2. Specifically, Petitioner alleges that he sent the DHO copies of all three copouts addressed to Lieutenant Buckler, as described above, and two "Statements of the Case." Id. The first "Statement of this Case," dated October 24, 2007, asked that

---

[1] This response is not dated.

1  Petitioner's hearing be postponed so that video surveillance of the cardroom (re: Incident Report No.
2  1658527) could be reviewed by the DHO, and indicated that the camera could be his staff
3  representative or witness. Id. at 7. The second "Statement of This Case," dated October 27, 2007,
4  asked that video surveillance of three range (re: Incident Report No. 1660209) be reviewed by the
5  DHO, and again indicated that the cameras would be his staff representative or witness. Id. at 8.
6       On January 1, 2008, Petitioner submitted a copout to "Span, OIC," requesting information
7  regarding his status in the SHU. Id. at 15. On January 15, 2008, L. Carlson responded that
8  Petitioner was in SHU pending resolution of two incident reports for engaging in sexual acts. Id. at
9  16. L. Carlson also stated the following:

> On November 8, 2007, the DHO postponed [Petitioner's hearing] and requested further information. The request for additional information was sent to the SIS office on November 26, 2007, December 14, 2007, and January 14, 2008. The SIS Lieutenant completed a memorandum documenting the results of his review of the videotapes and forwarded them to the DHO docket coordinator. You will be scheduled for your hearing in the near future.

13  Id. at 16.
14       On January 10, 2008, Petitioner submitted a copout to "Hiller, Secretary," requesting
15  information concerning the postponement of his DHO hearing. Id. at 17. On January 11, 2008,
16  Secretary Hiller responded that Petitioner's incident reports "had been suspended by the DHO,
17  pending review of the tapes, as you requested." Id.
18       On January 14, 2008, Lieutenant Buckler submitted a memorandum ("Memorandum")
19  addressed to L. Carlson, Unit Manager, which provided:

> Sometime after October 26, 2007, I received a cop-out from inmate Alexander, Tony, Reg. No. 12288-058, requesting that I review the cameras in Unit A-A for October 23, 2007, and in the Special Housing Unit for October 26, 2007, due to him receiving incident reports for Engaging in A Sexual Act (Code 205). Upon reviewing the cameras for Unit A-A it was discovered that the location for the incident as described in the incident was not captured by the cameras due to the area being a blind spot. Review of the cameras for Special Housing Unit revealed the officer distributing meals and drinks on the range. The officer looked in several cells with no unusual activity noted on the camera. However, the cameras do not show the activity that was taking place inside of inmate Alexander's cell.

25  See Respondent's Attachment 4.
26      A.    <u>DHO Hearing Regarding: Incident No. 1658527</u>
27       On January 17, 2008, at 10:50 am, DHO Scott Schleder ("hereinafter DHO") conducted a
28  hearing concerning Incident Report No. 1658527. See Petition at 21. The DHO's Report indicates

1  Petitioner waived his right to a staff representative, and to call witnesses.  Id.  During this hearing,
2  Petitioner requested a postponement so that his case could be heard by a different DHO who was
3  already familiar with his case.  Id.  DHO Schleder told Petitioner that he was an independent hearing
4  officer, and there was no need for him to be previously aware of the case.  Id.  The DHO also
5  informed him that he was aware that Petitioner's hearing had been previously postponed "due to
6  [Petitioner's] request that staff review any potential video evidence which may assist in your defense.
7  You were advised that Lt. Buckler had reviewed video surveillance equipment concerning this case .
8  . . and that Lt. Buckler had submitted his review in writing on 1-14-2008."  Id.

9        Petitioner was given an opportunity to make a statement and stated as follows:  "[T]he officer
10 could not have seen the Card Room from where she was walking on the tier."  Id.  When this DHO
11 asked if you were saying that the officer could not have seen you from the office, Petitioner
12 responded:  "[Officer Jenkins] was walking on the range to confront [me], and that she could not
13 have seen [me] while she was walking where she said she was walking."  Id. at 22.

14       The DHO concluded that Petitioner committed the prohibited act of Code 205, Engaging in a
15 Sexual Act.  Id. The DHO's decision was based on the statement of the reporting officer, Officer
16 Martin, and Lieutenant Buckler's Memorandum.  The DHO noted that: "it was documented no video
17 evidence existed in this case.  As stated, Lieutenant Buckler reviewed the video footage for that place
18 and time, and was unable to make any observation of you, or the staff member, at all."  Id.  The DHO
19 also considered Petitioner's statement that he did not violate Code 205.  The DHO stated that
20 although Petitioner claimed that Officer Martin could not have seen Petitioner from her position, the
21 DHO found "no reason for Officer Martin to falsify her statement, since it was obviously an
22 uncomfortable situation, and embarrassing to write about in an incident report. [Petitioner] would
23 have a reason to not be completely truthful, in order to avoid the consequences of [his] actions."  Id.
24 at 23.  Petitioner was sanctioned to 30 days disciplinary segregation, and the loss of 27 days good
25 conduct time.  Id.  The Code 300 charge was expunged.
26       On February 7, 2008, Petitioner was provided a copy of the DHO's report.  Id. at 24.
27       B.     DHO Hearing Regarding:  Incident Report No. 1660209
28       On January 17, 2008, at 11:00 am, the DHO conducted a hearing concerning Incident Report

No. 1660209. See Petition at 21. The DHO's report indicates Petitioner waived his right to a staff representative, and to call witnesses. Id. During this hearing, Petitioner also requested a postponement so that his case could be heard by a different DHO who was already familiar with his case. Id. The DHO informed Petitioner that he is an independent hearing officer, and there was no need for him to be previously aware the case. Id. The DHO also informed him that he was aware Petitioner's hearing had been previously postponed "due to [Petitioner's] request that staff review any potential video evidence which may assist in your defense. You were advised that Lt. Buckler had reviewed video surveillance equipment concerning this case . . . and that Lt. Buckler had submitted his review in writing on 1-14-2008." Id.

Petitioner was given an opportunity to make a statement and stated: "[T]he officer is incorrect and lied on the incident report . . . [T]he officer reported she locked [my] tray slot and moved on to the next cell, but . . . the officer actually left the tray slot open and gave [me my] food tray." Id. Petitioner alleged that this shows the officer falsified her report. Id.

The DHO concluded that Petitioner committed the prohibited act of Code 205, Engaging in a Sexual Act. Id. at 27. The DHO's decision was based on the statement of the reporting officer, Officer Jenkins and Lieutenant Buckler's Memorandum. Id. Lieutenant Buckler's memo stated that his review of the SHU, revealed the officer distributing meals and drinks on the range, and the officer looking in several cells with no unusual activity noted. Id. The memo noted that the cameras did not show the activity that was taking place inside Petitioner's cell. See Respondent's Attachment 4 at 11.

The DHO also considered Petitioner's statement that the officer lied in her incident report as evidenced by the fact that the officer said she locked Petitioner's tray slot and moved on, when in fact, the officer actually left the tray slot open and gave Petitioner his food tray. See Petition at 28. The DHO found the officer's statements to be more credible than Petitioner's denial. Id. The DHO found that the video did not lend support to either the reporting officer, or to the Petitioner, because it only showed the reporting officer conducting normal, routine duties, and did not depict what Petitioner was doing inside of his cell. Id. Petitioner was sanctioned to 30 days disciplinary segregation, and the loss of 27 days good conduct time. Id. The Code 307 charge was expunged.

On February 7, 2008, Petitioner was provided a copy of the DHO's report. Id. at 29.

C.     Administrative Appeals

On September 9, 2008, Petitioner submitted two Administrative Remedy Appeals challenging the DHO's findings regarding Incident Reports Nos. 1658527 and 1660209. See Respondent's Attachments 5, 6. On October 9, 2008, the Regional Director ("RD") upheld the DHO's findings in each case, and denied Petitioner's appeals. Id. Petitioner appealed the RD's decisions on October 27, 2008, each of which were denied on December 12, 2008. See Petition at 32-35.

## DISCUSSION

I.     Subject Matter Jurisdiction and Venue

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. If a constitutional violation has resulted in the loss of time credits, such violation affects the duration of a sentence, and the violation may be remedied by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990). Thus, this Court has subject matter jurisdiction.

Petitioner was in custody at the United States Penitentiary in Atwater, California, which is located within the jurisdiction of this Court, at the time the petition was filed; therefore, this Court is the proper venue. See 28 U.S.C. § 2241(d).

II.    Exhaustion

Federal prisoners must exhaust their administrative remedies before bringing a habeas petition pursuant to § 2241. E.g., Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986). Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed remedy has been exhausted." Laing, 370 F.3d at 998 (quoting McKart v. United States, 395 U.S. 185, 193 (1969)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative

remedies before proceeding in court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). In the instant matter, the record indicates that Petitioner has exhausted his administrative remedies as to both Incident Report Nos. 1658527 and 1660209.

### III. Analysis

Petitioner contends that his procedural due process rights were violated because he was not allowed to present surveillance video in his defense at his prison disciplinary hearing. Respondent asserts that Petitioner was afforded each of the procedural due process requirements enumerated in Wolff v. McDonnell, 418 U.S. 539, 555 (1974)  For the reasons discussed below, the Court finds that the process afforded to Petitioner during his disciplinary proceedings did satisfy the minimum requirements of the Due Process Clause as outlined in Wolff.

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir. 1991)). However, prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Wolff, 418 U.S. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), (citing Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454-55 (1984)).

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-67. Furthermore, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 455 (citations omitted).

### A. Exclusion of the Videotape Evidence (Incident No. 1658527)

Petitioner is essentially arguing that his procedural due process rights were violated because

the DHO did not personally review potentially exculpatory videotape evidence.  See Petition at 7-8.  Respondent contends that due process does not require the DHO to review the videotape personally, and the DHO may rely on the statements of staff who have reviewed the videotape.  Respondent cites to Cosgrove v. Rios, 2008 WL 4706683, *5 (E.D. Ky. Oct. 21, 2008) in support of its argument.

However, Cosgrove is not helpful in this matter because it conflates Wolff's procedural due process requirements with Hill's substantive due process requirements.[2]  For instance, the Cosgrove court found the prisoner's due process rights were not violated when the DHO excluded or failed to independently review the videotape evidence of the challenged incident because "the low evidentiary threshold of Superintendent v. Hill's" "some evidence" of guilt was satisfied.  Cosgrove's reasoning cannot be reconciled with the law of the Supreme Court, which establishes that Hill's "some evidence" requirement and Wolff's procedural protections are distinct due process requirements that must both be satisfied.  This means that if a prisoner is not afforded all of his due process rights under Wolff, (i.e., notice of the charges, opportunity to call witnesses and present documentary evidence in his defense, and a written statement of the decision), then a prisoner's procedural due process rights are nonetheless violated even if "some evidence" of a prisoner's guilt exists.  Under Cosgrove's reasoning, a due process violation will not occur even in a situation where exculpatory evidence exists that wholly exonerates the prisoner of the charges so long as the court finds that "some evidence" of a prisoner's guilt exists.  Adopting this type of reasoning would render a prisoner's right under Wolff to present evidence in his defense illusory and hollow.[3]

---

[2] Respondent also cites to Hatch v. Wilson, 2009 WL 2877222, *6 (E.D. Ky. Sept. 3, 2009), Davis v. Zuercher, 2009 WL 585807, *8 (E.D. Ky. March 6, 2009), and Cruzen v. Haynes, 2007 WL 3146383 (N.D.W.Va., Oct. 25, 2007) for this same proposition. Because these three cases rely on the same flawed reasoning as Cosgrove, the Court will only discuss Cosgrove in detail.

[3] Respondent also cites to several other cases in support of its argument. See Respondent's Answer at 17. However, none of these cases provide support for Respondent's argument as they are distinguishable from the facts of this case. For example, Hadden v. Mukasey, 2008 WL 2332344 (S.D.N.Y., June 3, 2008) is cited for the proposition that the "some evidence" requirement was satisfied by the DHO's reliance on a written summary of the incident by the prisoner's counselor. Id. Unlike the present case, in Hadden, the court found that the prisoner had not made a request for the surveillance video in advance of his disciplinary hearing and had therefore waived his right to seek its production at his hearing. See Hadden, 2008 WL 2332344 at *3. Therefore, Hadden is not helpful to Respondent, as the Hadden court did not address the ultimate issue but rather found that the prisoner had waived any right he had to present the videotape evidence.
       Respondent cites to Landry v. Adams, 2007 WL 869224 (E.D. Va., March 19, 2007) for the

Although the Court does not agree with Cosgrove's reasoning, the Court nonetheless finds that Petitioner's due process rights were not violated because he had an opportunity to present the videotape in his defense as the videotape was considered by the DHO in reaching its decision.[4] Contrary to Petitioner's argument, it was reasonable for the DHO consider the videotape evidence by relying on the written report of Lieutenant Buckler (i.e. the Memorandum).  The DHO did not need to personally review the videotape.  This is true for at least two reasons.  First, no United States Supreme Court case has held that in a prison disciplinary hearing, a prisoner is entitled to have the DHO personally review videotape evidence.[5]  Second, the United States Supreme Court has held that in a prison disciplinary proceeding, a prisoner is not entitled to the "full panoply of rights" that are present in a criminal prosecution.  Wolff, 418 U.S. at 556.  For example, it is uncontroverted that inmates have no constitutional right to confront or cross-examine adverse witnesses in a prison disciplinary hearing.  See Ponte v. Real, 471 U.S. 491, 510 (1985) (Marshall, J., dissenting); see also Baxter v. Palmigiano, 425 U.S. 308, 322-233 (1976); Wolff, 418 U.S. at 566-68.  Given that a DHO can rely on the statements of adverse witnesses without Petitioner's cross-examination or confrontation, it follows that a DHO officer can similarly rely on the statements of a staff member regarding his review of potentially exculpatory videotape evidence.  Therefore, it was reasonable for the DHO to have relied on Lieutenant Buckler's statement regarding his summary of the contents of the videotape evidence.  Therefore, the Court finds that Petitioner's due process rights were not violated because he was afforded his procedural due process requirements as outlined in Wolff.

---

proposition that due process was not violated by the absence of video evidence.  Landry is distinguishable from the present case because in Landry, the prisoner declined to introduce any evidence in his defense at his hearing. In the present case, Petitioner sought to have the DHO review the potentially exculpatory evidence and sought to have the videotape presented at his hearing. Therefore, Landry is not relevant to this case.

[4]The Court notes that at Petitioner's disciplinary hearing, the DHO informed Petitioner that he was aware that Petitioner's hearing had been previously postponed "due to [Petitioner's] request that staff review any potential video evidence which may assist in your defense.  You were advised that Lt. Buckler had reviewed video surveillance equipment concerning this case . . . and that Lt. Buckler had submitted his review in writing on 1-14-2008."  See Petition at 21.

[5]But see Howard v. United States Bureau of Prisons, 487 F.3d 808, 814-15 (10th Cir. 2007) (holding that an inmate's due process rights were violated by a DHO's refusal to review a videotape of the incident which might have conclusively established the inmate's innocence).

Additionally, in light of the fact that Lieutenant Buckler concluded that no video evidence existed with respect to Incident No. 1658527, it cannot be said that Petitioner's due process rights were violated. Although Petitioner claims that the videotape would show that he never stood in front of the door and masturbated, as the DHO noted, Lieutenant Buckler reviewed the video footage for that place and time, and concluded that he was unable to make any observation of Petitioner or the reporting officer. See Petition at 22. Therefore, there was no video evidence for the DHO to personally review.

Accordingly, Petitioner's procedural due process rights were not violated with respect to Incident No. 1658527 because the DHO considered the videotape evidence by relying on Lieutenant Buckler's Memorandum. Petitioner is not entitled to habeas relief.

        B.        <u>Exclusion of the Videotape Evidence (Incident No. 1660209)</u>

Similar to Incident No. 1658527, Petitioner's procedural due process rights were also not violated with respect to Incident No. 1660209. For the reasons discussed in Section A, it was reasonable for the DHO to consider the videotape evidence by relying on Lieutenant Buckler's statements.

Additionally, Petitioner's due process rights were not violated because Lieutenant Buckler reviewed the videotape and concluded that the video footage showed no unusual activity and that the cameras did not show the activity that was taking place inside Petitioner's cell. See Respondent's Attachment 4 at 11. Based on Lieutenant Buckler's review, the DHO found that the video did not lend support to either the reporting officer, or to the Petitioner, because it only showed the reporting officer conducting normal, routine duties, and did not depict what Petitioner was doing inside of his cell. See Petition at 28. Therefore, there was no video footage of any activities that were taking place inside of Petitioner's cell for the DHO to review.

Accordingly, Petitioner's procedural due process rights were not violated with respect to Incident No. 1660209 because he was allowed to present videotape evidence in his defense. Petitioner is not entitled to habeas relief.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED; and

2. The Clerk of the Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

Dated: **May 12, 2011**          **/s/ Dennis L. Beck**
                                  UNITED STATES MAGISTRATE JUDGE